WILLIAM BOYNTON *vs.* DANIEL HAZELBOOM & wife.

Specific performance of a contract to convey a farm in exchange for tenement houses w:l not be decreed in equity, in favor of one who has materially misrepresented the amount of rent yielded by the houses which he on his part is to convey, and thereby induced the other party to enter into the contract; although such misrepresentations were not fraudulent, and the party making them offers to make good the deficiency in the rent, and although, before the discovery that the representations made were not true, the parties entered upon the execution of the contract.

WELLS, J.  This is a bill in equity to compel the conveyance, by husband and wife, of certain real estate of the wife, held to her sole and separate use, in specific performance of a contract for the exchange of lands. The contract was under seal, executed by the husband in his own name, and neither the wife nor her interest in the land is mentioned in the instrument. The plaintiff contends that the wife can be required to execute a deed, 1st, because the land was in reality the property of the husband, placed in her name merely as a cover, and in fraud of creditors ; 2dly, because the contract was made by the husband as her agent, either by previous authority or subsequent ratification ; and 3dly, because it has been partially executed with her assent and concurrence, possession having been taken, and the plaintiff having incurred some expenditures. The defence, besides a denial of the above grounds for maintaining the bill, rests upon alleged misrepresentations in regard to the rents of the houses that were to be given in exchange ; by which the defendants were misled and induced to agree to the exchange, and to commence upon the execution thereof.

The testimony shows clearly, and without any conflict, that the defendants acted, in the whole transaction, (until they repudiated the bargain upon finding the facts to be otherwise,) upon the distinct understanding that the tenements, which were to be received from the plaintiff in exchange, were at that time (January 1866) rented at certain named rates of rent. It so appears in the memorandum of the plaintiff's first proposition, prepared in the office of the broker employed, and exhibited to

the defendants. A strong preponderance of the testimony also shows that it was explicitly so represented to Hazelboom by the plaintiff. Boynton himself will not swear that he did not so state; though the tenor of his testimony is that he represented merely that the houses would rent for such rates. He meets the stress of the case by introducing witnesses to prove that the houses were worth and would rent for the rates named; that he had caused his tenants to be notified that the rents would be at those rates from and after January 1; and that he offered, when Hazelboom had refused to proceed further on this account, to make it good to him, or to take a lease himself of the whole property at those rates. It appears that Boynton had raised the rents of several of the tenants in November previous. In January he determined to make a still further advance, the advantage of high rents in negotiating a sale being one of his reasons therefor, and caused notices to be given to all his tenants that the rents would be fixed, from and after January 1st, at the rates named in his dealings with the defendants. But the tenants had not agreed to comply. Several of them refused to comply, and, as their tenancies had not been legally terminated, continued to occupy at the former rates of rent. His own agent for the collection of rents considered the rates too high at that time, although afterwards he was able to rent such of the tenements as became vacant at those rates, there being a general advance of rates of rent in the spring following. Immediately upon the discovery of these facts as to the rents, the defendants refused to proceed further in the execution of the agreement for exchange, assigning it as the ground of refusal.

Assuming the plaintiff's position, that he in good faith supposed his proceedings in relation to the tenants were sufficient to justify his representations as to the rents, so as to relieve him from any charge of fraud or intentional misrepresentation, there still remains the fact that the defendants made whatever agreements they have made or assented to under a misapprehension occasioned by the plaintiff. It was a mistake of fact in a material point affecting the proposed exchange of property. An offer of tenement houses already rented to tenants at certain

**rates of** rent is not made good by a conveyance of such houses in the actual occupation of tenants, with all the rights and incidents which pertain even to mere tenancy at will or sufferance, who have not agreed to the advanced rates of rent required. Even the advantage of a termination of all tenancies by a deed of conveyance would not give the purchaser the certain present enjoyment of the income contemplated. He would be subject to the necessity of making new contracts, if not to troublesome delays and litigation to oust the tenants. For this he is not bound to accept compensation. He is entitled to have what he contracted for, and cannot be required to accept an equivalent. *Park* v. *Johnson*, 7 Allen, 378.

In view of this material mistake of facts, under which the defendants entered into the arrangement for exchange of lands, equity will not interpose to compel its specific performance. *Western Railroad* v. *Babcock*, 6 Met. 346–352. *Old Colony Railroad* v. *Evans*, 6 Gray, 25–36. *Richmond* v. *Gray*, 3 Allen, 25. It becomes unnecessary, therefore, to determine whether the wife could be required to execute a conveyance of her lands upon the evidence reported in this case as to her relations to and participation in the proceedings between her husband and the plaintiff.

*Bill dismissed with costs.*

*I. S. Morse & J. B. Goodrich*, for the plaintiff.
*J. G. Abbott*, for the defendants.